UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROYAL ADHESIVES AND SEALANTS, LLC,

        Plaintiff,

    v.

ADVANCED MANUFACTURING
TECHNOLOGIES, INC., AND JOHN
AFFOURTIT ,

        Defendants.

No. 13 C 1695

Judge Thomas M. Durkin

MEMORANDUM OPINION AND ORDER

Royal Adhesives and Sealants, LLC ("Royal"), alleges that Advanced Manufacturing Technologies, Inc. ("AMT"), and AMT's sole-shareholder, John Affourtit (AMT and Affourtit collectively, "Defendants"), fraudulently sold Royal a piece of equipment known as an E-Beam, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count I), and Illinois common law, including claims of fraud (Count II), promissory estoppel (Count III), and money had and received (Count IV). *See* R. 1. Royal also labels its allegations that Affourtit should be held liable for the actions of AMT as "Count V" of its complaint. *See id.* Defendants have moved to dismiss all counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 23. For the following reasons, Defendants' motion is granted.

## Background

In October 2012, Royal entered into discussions with Affourtit to purchase an E-Beam. R. 1 ¶ 6.[1] AMT sent Royal a document labeled "quotation," which offered a "COMET ADTS 70/180 KV E-Beam Laboratory Test System," for $165,000, paid in installments of "25% with Purchase Order, 70% with shipment confirmation, 5% after start up & acceptance-net 30 days." R. 1-1. The quotation document also describes Affourtit as a "salesperson." *Id.* Royal alleges that Affourtit was the sole-shareholder of AMT, and that he falsely told Royal that he had earned a PhD, was an expert in E-Beam technology, and was an authorized representative of the COMET Group. R. 1 ¶¶ 9-10. Based on the quotation document and Affourtit's representations, Royal decided to purchase the "COMET ADTS 70/180 KV E-Beam Laboratory Test System." *Id.* ¶ 11.

On November 5, 2012, AMT sent Royal an invoice for a "COMET ADTS 70/180 KV E-Beam Laboratory Test System," requiring payment of $41,240, i.e., the first installment of 25% of the $165,000 purchase price. R. 1-2. Royal paid this amount to AMT on or about November 15, 2012. R. 1 ¶ 14.

On January 21, 2013, AMT sent Royal another invoice requiring payment of $117,277, i.e., the second installment of 70% of the purchase price plus $1,777.37 in shipping costs. R. 1-3. Unlike the quotation document and the November 5 invoice,

---

[1] Royal does not explain what an "E-Beam" is in the complaint or its briefs. Defendants explain that "[a]n E-beam system is a piece of equipment that uses an electron beam for such applications as sterilizing food packaging or medical equipment; or curing ink or adhesives and so forth." R. 24 at 1 n.1. A detailed understanding of E-Beam technology and its applications is not necessary to address this motion.

the January 21 invoice described the equipment as an "E-Beam 70/180 KV E-Beam Laboratory Test System," as opposed to a "COMET ADTS 70/180 KV E-Beam Laboratory Test System." *Id.* Royal paid this amount to AMT on or about January 24, 2013. R. 1 ¶ 17.

Royal alleges that on or about February 14, 2013, Defendants delivered a piece of equipment that was not a "COMET ADTS 70/180 KV E-Beam Laboratory Test System." *Id.* ¶ 18. The equipment Royal received was not manufactured by the COMET Group and was "missing critical components making the equipment useless to Royal." *Id.*

Royal notified AMT and Affourtit that the wrong piece of equipment had been delivered, and requested immediate delivery of the "COMET ADTS 70/180 KV E-Beam Laboratory Test System" or refund of Royal's money. *Id.* ¶ 20. Defendants did not comply with Royal's request. *Id.* ¶ 21.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## Analysis

## I.     Count V – Affourtit's Liability

Royal alleges that Affourtit is personally liable for the four substantive counts of its complaint, and Royal reiterates this allegation in "Count V" in which it asks the Court to "pierc[e] the corporate veil." *See* R. 1. Defendants argue that the complaint "fails completely in making any substantive factual allegations against John Affourtit in his individual capacity," R. 24 at 4, and that Royal "pleads only . . . conclusory statements in support of its piercing the corporate veil count." *Id.* at 6.

Under Illinois law, "a corporation as a legal entity exists separately from its shareholders, directors, and officers, who are not ordinarily liable for the corporation's liabilities." *Forsythe v. Clark USA, Inc.*, 836 N.E.2d 850, 854 (Ill. App. Ct. 1st Dist. 2005), *aff'd* 864 N.E.2d 227 (Ill. 2007). However, a party may "pierce the corporate veil" and assert a claim against an individual "when an 'individual or

entity uses a corporation merely as an instrumentality to conduct that person's or entity's business.'" *Laborers' Pension Fund v. Lay–Corn, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009) (quoting *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 775 (Ill. 2005)). Thus, in an action to pierce a corporate veil under Illinois law, a plaintiff must allege that "(1) there [is a] unity of interest and ownership [such] that the separate personalities of the corporation and the individual no longer exist; and (2) . . . adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751-52 (7th Cir. 2012) (internal quotation marks omitted).

Royal makes the following allegations relevant to Affourtit's liability: (1) "the accounts of AMT and Affourtit are commingled to the extent that there is no legal separation between the two," R. 1 ¶ 46; (2) "AMT was undercapitalized to the extent that it was not a viable legal entity separate from that of its shareholder, Affourtit, *id.* ¶ 47; and (3) "AMT is the alter ego of Affourtit and any liability of AMT is also attributable to Affourtit," *id.* ¶ 48. The only actual fact that Royal alleges in support of its theory of Affourtit's liability is that Affourtit was AMT's sole shareholder. That fact alone, however, is an insufficient basis to state a claim based on piercing the corporate veil. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 381 (7th Cir. 2008) ("[T]he fact that a corporation has only one single shareholder is not proof that the corporation is the 'alter ego' of that shareholder.") (internal quotation marks omitted); *Melko v. Dionisio*, 580 N.E.2d 586, 595 (Ill. App. Ct. 2d Dist. 1991) ("[T]he mere allegation that [defendant] was a

dominant or sole shareholder is insufficient to enable a court to disregard the separate corporate existence.").

The remaining portions of Royal's complaint relevant to Affourtit's liability consist of bare-bones, conclusory allegations that AMT was undercapitalized and that the accounts of Affourtit and AMT were commingled. Allegations so devoid of factual content do not "'allow[] the court to draw the reasonable inference that [Affourtit] is liable for the misconduct alleged.'" *Mann*, 707 F.3d at 877 (quoting *Iqbal*, 556 U.S. at 678). Royal must explain the factual basis supporting its claim to relief, and may not simply conclude that it is so entitled, as it does in its current complaint. Because Royal has failed to plausibly allege that Affourtit is liable here, Royal's allegations against Affourtit are dismissed.

In its brief in opposition to the motion, Royal makes additional factual allegations based on documents attached to the brief. The Court does not consider those allegations and documents on this Rule 12(b)(6) motion because they are "outside the pleadings" and are not "documents to which the Complaint had referred." *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). Yet, these allegations are the type that could make Royal's claims against Affourtit plausible and "allow the Court to draw the reasonable inference that Affourtit is liable for the misconduct alleged." *Mann*, 707 F.3d at 877. Royal cites withdrawals shown on AMT's bank statements that appear to be personal in nature (i.e., Starbucks, CVS, the Apple Store, a barber shop, Home Depot, a personal home mortgage lender), as well as large payments to Affourtit, and argues that AMT and Affourtit's funds

were commingled. *See* R. 27 at 6-7; R. 27-3. These are the type of factual allegations that can sufficiently support a claim for individual liability based on piercing the corporate veil. *See Auto. Fin. Corp. v. Joliet Motors, Inc.*, 761 F. Supp. 2d 789, 793-94 (N.D. Ill. 2011); *Beacon Textile Unit-2 v. JK Group, Ltd.*, 2010 WL 4338477, at *7, (N.D. Ill. Oct. 25, 2010); *Dimmitt & Owens Fin., Inc. v. Superior Sports Prods., Inc.*, 196 F. Supp. 2d 731, 741 (N.D. Ill. Apr. 23, 2002).[2] Thus, the Court grants Royal leave to replead its claims against Affourtit.

## II. Count I: Illinois Consumer Fraud and Deceptive Business Practices Act

Illinois Consumer Fraud and Deceptive Business Practices Act (the "Consumer Fraud Act"), 815 ILCS 505/1, *et seq.*, "'protect[s] consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices.'" *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). The statute, however, is "'not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy.'" *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (quoting

---

[2] In its brief on this motion, Royal also alleges that AMT was dissolved for failure to file certain corporate documents, *see* R. 27 at 5-6, and that AMT was undercapitalized because Affourtit admitted that AMT is out of business and has no assets. R. 27 at 7-8. Royal cites no evidence that AMT failed to file certain corporate documents or that AMT was dissolved on this basis. In support of its allegation that AMT was undercapitalized, Royal cites a document handwritten by Affourtit in which he writes, "<u>AMT</u> closed accounts, closed company – no cash no assets." R. 27-4 at 2. This document does not appear to support Royal's allegation because Affourtit's statement appears to refer to AMT's current status not its capitalization while it was still in business. *See id.* In any event, the Court does not need to address these allegations in detail as they are also "outside the pleadings," *Hecker*, 556 F.3d at 582, and are not necessary to the Court's ruling on this motion.

*Zankle v. Queen Anne Landscaping*, 724 N.E.2d 988, 992-93 (Ill. 2000)). "A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005).

AMT contends that this dispute lies in contract rather than tort, as Royal alleges, and that Royal's claim under the Illinois Consumer Fraud Act must be dismissed for that reason. *See* R. 24 at 10-11; R. 37 at 9. Royal does not directly respond to this contention. Royal's lack of a substantive response is likely because Royal's allegations clearly show that its claim is for breach of contract. Royal alleges that AMT offered Royal an E-Beam manufactured by COMET for $165,000, *see* R. 1-1, and that Royal accepted that offer by paying AMT 95% of that price to secure delivery as required by AMT's invoices. *See* R. 1-2; R. 1-3; R. 1 ¶¶ 14, 17. "In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract," *see Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006), and that is what we have here. Because a contract exists between Royal and AMT, Royal cannot state a claim under the Illinois Consumer Fraud Act, and Count I is dismissed. The Court, however, does grant Royal leave to replead a breach of contract claim.[3]

## III.    Count II: Common Law Fraud

Just as with the Illinois Consumer Fraud Act, under Illinois law, a breach of a contractual promise, i.e., a false promise of future conduct, "without more" does not constitute fraud. *See Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 901 (7th Cir.

---

[3] That Royal has not alleged a breach of contract claim is of no moment. *See Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899 (7th Cir. 2006) (affirming the district court's finding that the plaintiff's claim was one for breach of contract and dismissing plaintiff's claim under the Illinois Consumer Fraud Act despite the plaintiff's failure to allege a breach of contract claim).

2006); *Firstar Bank, N.A. v. Faul*, 2001 WL 1636430, at *4 (N.D. Ill. Dec. 20, 2001). The Court has already found that Royal's allegations amount to a claim for breach of contract. Thus, Royal fails to state a claim for fraud and Count II is dismissed.

In addition to AMT's failure to deliver the E-Beam Royal bargained for, Royal alleges that AMT "knowingly made false statements of material fact . . . about the availability, payment terms, and delivery of the [E-Beam]." R. 1 ¶ 32. In other words, Royal alleges that AMT never had any intention to deliver a new E-Beam manufactured by COMET. Royal does not allege any facts to support this allegation, let alone facts sufficient to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b) that is applicable to fraud claims. Nevertheless, even if Royal had sufficiently alleged AMT's intent to deliver the wrong E-Beam, Royal and AMT are bound by the terms of their agreement. It is a claim for breach of that agreement, and not for fraud, that Royal appears to have.

In support of its fraud claim, Royal also alleges that Affourtit misrepresented that he had earned a PhD, was an authorized representative of the COMET Group, and was an expert in E-Beam technology. In light of the Court's holding that a contract existed between Royal and AMT, these allegations can only be relevant to a claim for fraudulent inducement. In the event that Royal chooses to replead and include a claim for fraudulent inducement, the Court notes that Affourtit's misrepresentations as Royal has alleged them are not sufficiently material to support a claim for fraudulent inducement. Royal was purchasing an E-Beam, not Affourtit's expertise. Although Royal alleges that it relied on Affourtit's

misrepresentations, Royal does not explain why Affourtit's misrepresentations were necessary for Royal to feel comfortable purchasing the E-Beam from AMT. The real gravamen here is that AMT promised Royal a new E-Beam manufactured by COMET, and it delivered something else. Royal does not allege that only an expert could know whether an E-Beam was new and manufactured by COMET. Without such additional factual allegations, Royal's allegations of Affourtit's misrepresentations cannot state a claim for fraudulent inducement.

**Count III and IV: Promissory Estoppel and Money Had and Received**

Under Illinois law, a "plaintiff may not pursue a quasi-contractual claim where there is an enforceable, express contract between the parties." *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003). Thus, neither the quasi-contractual claims for promissory estoppel, *see Wagner Excello Foods, Inc. v. Fearn Int'l, Inc.*, 601 N.E.2d 956, 964 (Ill. 1992), or money had, *see In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 2002 WL 1553318, at *1 (N.D. Ill. July 11, 2002), are available if a contract exists between the parties. Since the Court holds that a contract exists between Royal and AMT, Royal's claims for promissory estoppel and money had, Claims III and IV, are dismissed.

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss, R. 23, is granted, and Royal's claims are dismissed without prejudice. Royal has up to and including May 19, 2014, to replead its claims if it can address the deficiencies the Court has identified in this Opinion and Order. If Royal fails to do so, this dismissal will become with prejudice.[4]

ENTERED:

_Thomas M Durkin_

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: April 17, 2014

---

[4] Defendants have also moved to strike a letter Royal attached to its brief from a person opining as to the value of the equipment that AMT delivered to Royal. R. 35. Royal argues that it only included this letter with its brief because AMT included an affidavit from Affourtit describing the functionality and value of the equipment at issue. R. 24-1. Neither of these submissions is necessary for the Court to render its decision, thus, Defendants' motion to strike, R. 35, is denied as moot.